# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| Rhonn Mitchell, on behalf of himself and all others similarly situated | § | |
| | § | |
| Plaintiff, | § | CA No.: 3:23-cv-1278-N |
| | § | |
| v. | § | |
| | § | Class Action Complaint |
| Toyota of Dallas | § | Jury Demanded |
| | § | |
| Defendant. | § | |

## PLAINTIFF RHONN MITCHELL'S FIRST AMENDED CLASS ACTION COMPLAINT

### 1. STATEMENT OF FCC COMMISSIONER GEOFFREY STARKS – MARCH 2023

1.1. "Texting is increasingly becoming Americans' preferred way to communicate. But unfortunately, as we've seen before, the more popular a communications service is, the more it's targeted by spammers and bad actors. The rise of robotexts – unwanted or illegal text messages – means a similar rise in harm to consumers, in the form of phishing attacks, malware, and scams. And robotexts are different than robocalls. Recipients of a robocall have the ability to either pick up the phone or not. But on most devices, recipients of a robotext see at least some of an unwanted message immediately, exposing them – and potentially luring them into – harm.

1.2. And you know as well as I do that we've been getting more of these unwanted texts. In 2022, Americans received over 225 billion robotexts – a 157 percent year-over-year increase, and a 307 percent increase from 2020. Last month, February 2023, 10.7 billion spam texts were reported – nearly 39 for every person in the United States. Given this growth, failure to act could lead to robotexting to become so pervasive that it negatively affects texting, just as robocalls have done for phone calls. I can confidently say that's the last thing we want."

2. **Introduction**

2.1. Rhonn MItchell ("**Plaintiff**") on behalf of himself and all others similarly situated, brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("**TCPA**"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Plaintiff also alleges a state court cause of action.

2.2. Plaintiff's cellular residential telephone number is/was listed on the national Do Not Call Registry, a list explicitly designed to protect the public from intrusive telemarketing calls. Toyota of Dallas texted Plaintiff's residential phone with a telemarketing solicitation, was told to "stop," yet

called and texted him again on numerous occasions with more telemarketing solicitations. Plaintiff also called Toyota of Dallas and told them to quit contacting him. He also sent them a letter saying the same.

2.3. Because Plaintiff did not consent to receive these calls/texts from Defendant, these calls/texts violate the TCPA and the Do Not Call Registry laws and regulations.

**3. Parties**

3.1. Plaintiff is a resident of Farmer's Branch, Texas and lives in this District.

3.2. Defendant Toyota of Dallas is a car dealership serving North Dallas. Its address is 2610 Forest Ln, Dallas, Texas 75234. Defendant has appeared in this action.

**4. Venue**

4.1. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

4.2. Venue is proper because Toyota of Dallas has its principal office in this District and Defendant has sufficient contacts in this State and District to subject it to personal jurisdiction.

4.3. This Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a), because it is so closely related to the federal claim that they form a single case or controversy.

**5. Article III Standing**

5.1. Plaintiff has Article III standing for his claim under the TCPA. *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021); *Jamison v. Esurance Ins. Servs., Inc.,* No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016).

5.2. Plaintiff was harmed by Toyota of Dallas' actions of calling/texting his residential phone while his number was on the Do Not Call Registry, without consent in the following manners:

5.2.1. Plaintiff's privacy was invaded by Toyota of Dallas;

5.2.2. Plaintiff was harassed and abused by Toyota of Dallas' calls/texts;

5.2.3. Toyota of Dallas' calls/texts were a nuisance to Plaintiff;

5.2.4. Plaintiff's phone was unavailable for other use while processing the illegal calls/texts from Toyota of Dallas;

5.2.5. Toyota of Dallas' illegally seized Plaintiff's telephone line while it made the illegal calls/texts to Plaintiff's cellular telephone;

5.2.6. Plaintiff's telephone line was occupied by the unauthorized calls/texts from Toyota of Dallas;

5.2.7. Toyota of Dallas' seizure of Plaintiff's telephone line was intrusive; and

5.2.8. Plaintiff was inconvenienced by Toyota of Dallas' calls/texts, by among other things, having to check the nature of the call/text.

**6. The National Do Not Call Registry**

6.1. The national Do Not Call Registry ("Registry") allows consumers to register their telephone numbers and thereby state their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

6.2. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential and wireless telephone numbers listed on the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

6.3. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

6.4. The Federal Communications Commission found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure

effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

6.5. These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

6.6. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d) (1, 2, 3, 6).

6.7. The regulations also require that a company that makes telemarketing calls/texts must provide "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." 47 CFR § 64.1200(d) (4).

6.8. The regulations also require that a company that makes telemarketing calls/texts must honor requests for the company to stop calling/texting them. CFR § 64.1200(d) (3).

6.9. Accordingly, all of its telemarketing calls/texts violate the TCPA, unless Toyota of Dallas can demonstrate that it has the required written do not call policy.

6.10. There is a private right of action to enforce 47 C.F.R. § 64.1200(d)

through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

6.11. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

6.12. Alhough some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e); *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *2–3 (N.D. Tex. Feb. 24, 2022).

7. **Factual Allegations**

7.1. Plaintiff is the owner of and user of the residential cellular telephone

number 214-XXX-6854. Each of the calls/texts referenced below were made to Plaintiff's residential telephone number 214-XXX-6854. 214-XXX-6854 is a cellular number/network.

7.2. Plaintiff uses the telephone number 214-XXX-6854 for residential purposes. It is not a business number.

7.3. Plaintiff's cellular telephone number 214-XXX-6854 is a personal cell phone that Plaintiff uses for personal, family and household use. Plaintiff uses his cell phone for navigation purposes, sending and receiving emails, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose. Plaintiff's phone number 214-XXX-6854 is a residential phone.

7.4. Plaintiff registered the telephone number 214-XXX-6854 on the National Do Not Call Registry more than 30 days before receiving the calls/texts at issue and it has remained on the Registry since then.

7.5. Plaintiff received a telemarketing text from Defendant at 1:22 pm on January 30, 2020. Upon receipt of the text Plaintiff replied "stop" and then received a text from Defendant stating, "You've been unsubscribed and will no longer receive messages." Defendant's records note that the "stop" request was received and the records reflect "SMS Received

Customer has opted out."

7.6. Despite opting out, Plaintiff received additional telemarketing texts from Defendant on 3-30-2020, 9-17-2020, 10-13-2020, 11-13-2020, 11-20-2020, 1-13-2021, 3-11-2021, 5-12-2021, 6-23-2021, 7-15-2021, 7-22-2021, 8-17-2021, 8-24-2021, 8-28-2021, 10-6-2021, 4-22-2022, 6-22-2022, 6-28-2022, 6-30-2022, 11-11-2022, 11-28-2022, 12-19-2022, 12-29-2022, 1-12-2023, 2-10-2023, 2-17-2022, and 2-22-2023.

7.7. The above texts were received by Plaintiff on his telephone number 214-XXX-6854. The texts solicited Plaintiff on behalf of Toyota of Dallas.

7.8. Plaintiff was not a customer of Toyota of Dallas and had not given Toyota of Dallas his permission to text him.

7.9. The texts were for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Specifically, Defendant was seeking to sell Toyota of Dallas' automobile dealership services.

7.10. The texts were placed without the Plaintiff's prior express written consent and were willful violations of the respective laws.

7.11. All the texts were placed to a telephone number that Plaintiff had listed on the National Do Not Call Registry for more than 31 days prior to the texts.

7.12. Plaintiff's telephone number was on the National Do Not Call Registry at the time he received the texts.

7.13. Defendant also made telemarketing telephone calls to Plaintiff on his telephone number 214-XXX-6854.

7.14. Defendant called Plaintiff on 2-4-2020, 2-6-2020 (2 calls), 2-24-2020, 3-30-2020, 5-15-2020, 5-27-2020, 6-4-2020, 6-16-2020, 6-22-2020, 7-10-2020, 7-16-2020, 9-3-2020, 12-14-2020, 12-23-2020, 1-1-2021, 1-8-2021, 1-12-2021, 1-13-2021, 6-23-2021, 6-25-2021, 6-26-2021, 7-9-2021, 7-15-2021, 9-21-2021, 12-3-2021, 1-20-2022, 4-21-2022, 4-28-2022, 4-29-2022 (2 calls), 6-15-2022, 6-22-2022, 9-15-2022, 10-7-2022, 10-14-2022, 12-29-2022, 12-29-2022, and 7-17-2023.

7.15. The calls were for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Specifically, Defendant was seeking to sell Toyota of Dallas' automobile dealership services.

7.16. The calls were placed without the Plaintiff's prior express written consent and were willful violations of the respective laws.

7.17. All the calls were placed to a telephone number that Plaintiff had listed on the National Do Not Call Registry for more than 31 days prior to the texts.

7.18. Plaintiff's telephone number was on the National Do Not Call Registry at the time he received the calls.

7.19. On December 20, 2022, Plaintiff sent Defendant a letter telling

Defendant it was violating the TCPA and not to call/text him. Specifically, Plaintiff wrote:

> I have maintained this telephone number over a decade & my telephone number is on the national do not call list registry. I also have no current professional or personal relationship(s) with you, your company or known associates. I have not authorized or agreed to receive text messages from your company or any representatives. I should not be receiving unsolicited texts or phone calls from your company.

7.20. Even after receiving this letter, Defendant continued to call and text Plaintiff.

**8. Direct Liability**

8.1. Toyota of Dallas sent the text messages at issue to Plaintiff and members of the Classes using "SocketTalk," a software program managed by Toyota of Dallas.

8.2. Toyota of Dallas is responsible for all digital marketing campaigns, including text message marketing, sent by its employees.

**9. Vicarious Liability**

9.1. Alternatively, to the extent Toyota of Dallas is not directly liable for sending the text messages, Toyota of Dallas is variously liable for the text messages at issue.

9.2. **Actual Authority**

9.2.1. The TCPA incorporates federal common law agency principles.

9.2.2. On May 9, 2013, the FCC held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013) ("*Dish Network*").

9.2.3. Employees of Toyota of Dallas, sent the text messages and made the calls on behalf of Toyota of Dallas and were acting in the scope and course of their employment by Toyota of Dallas.

9.2.4. Toyota of Dallas authorized the employees to use Toyota of Dallas's tradenames and to contact consumers on behalf of Toyota of Dallas.

9.2.5. Toyota of Dallas provided the employees with the telephone numbers of potential customers to be called/texted.

9.2.6. The calls and text messages were used to market Toyota of Dallas' services.

9.3. **Apparent Authority**

9.3.1. *Dish Network* further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the [third party] access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd. at 6592 (¶ 46).

9.3.2. The use of Toyota of Dallas' name with the calls and text messages used by Toyota of Dallas' employees makes it appear that Toyota of Dallas and its employees are acting together as the same company.

9.3.3. Toyota of Dallas allowed its employees to use its name in an effort to market Toyota of Dallas's services.

9.4. **"On Behalf Of" Liability**

9.4.1. Section 227(c)(5) of the TCPA specifies that a person who has received more than one telephone call within any 12-month period "by or on behalf of the same entity" in violation of the regulations promulgated by the Federal Communications Commission may bring an action based on such violation to enjoin further calls or recover damages.

9.4.2. Toyota of Dallas hired employees and trained them to send the text messages and make the calls on Toyota of Dallas' behalf. Per Toyota of Dallas's instructions, their employees sent text messages and made calls in violation of the FCC's regulations under 47 C.F.R. § 64.1200 (c) and (d) to Plaintiff and the Class Members on behalf of Toyota of Dallas.

**10. Class Action Allegations**

10.1. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of classes of all other persons or entities similarly situated throughout the United States.

10.2. The "DNC Class." The class of persons Plaintiff proposes to represent with respect to Count One is tentatively defined as all persons within the United States whose phone numbers were registered on the Do Not Call Registry for more than 31 days prior to receiving calls from, or on behalf of, Toyota of Dallas, and who, since four years preceding the filing of this Complaint, received more than one telemarketing call or text on their residential line within any twelve-month period from, or on behalf of, Toyota of Dallas. The Class excludes anyone who received the calls/texts on their business line.

10.3. The "Policy Class." The class of persons Plaintiff proposes to represent with respect to Count Two is tentatively defined as all persons within the United States to whose telephone number Toyota of Dallas placed (or had placed on its behalf) two or more telemarketing calls/texts in a 12-month period after four years preceding the filing of this Complaint. The Class excludes anyone who received the calls/texts on their business

cellular line.

10.4. The "Internal Do Not Call Request Class." The class of persons Plaintiff proposes to represent with respect to Count Three is tentatively defined as all persons in the United States (i) to whom more than one call/text was made for the purpose of encouraging the purchase of Defendant's goods or services in any twelve-month period since the date four years prior to the filing of this action, (ii) to a residential telephone number, (iii) where the phone number was on Defendant's do-not-call list at the time of at least one such call/text.

10.5. The "Texas Class." The class of persons Plaintiff proposes to represent with respect to Count Four is tentatively defined as all persons in the state of Texas to whom after four years preceding the filing of this Complaint Toyota of Dallas sent a text in violation of 47 U.S.C. § 227 or a regulation adopted under that provision.

10.6. The classes as defined above are identifiable through phone records and phone number databases.

10.7. Plaintiff does not know the exact number of members in the proposed classes, but reasonably believes based on the scale of Toyota of Dallas's business, and the number of texts and calls that he received, that the classes are so numerous that individual joinder would be impracticable.

On information and belief, the potential class members number at least in the thousands.

10.8. Plaintiff and all members of the proposed classes have been harmed by the acts of Defendant in the form of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing texts, and violations of their statutory rights.

10.9. Plaintiff is a member of the classes.

10.10. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

10.10.1. Whether Toyota of Dallas or its agents violated the TCPA by engaging in advertising by unsolicited telemarketing calls/texts;

10.10.2. Whether Toyota of Dallas or its agents, within the four years before the filing of the initial Complaint, made more than one telemarketing text within any twelve-month period to individuals whose telephone number had been registered on the Do Not Call Registry for more than 31 days after being told to stop texting them.

10.10.3. Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendant's actions.

10.11. Plaintiff's claims are typical of the claims of class members.

10.12. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

10.13. The actions of Defendant are generally applicable to the class as a whole and to Plaintiff.

10.14. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which is ascertainable from records maintained by Defendant's records.

10.15. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

10.16. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## 11. Count One: Violation of the TCPA's Do Not Call provisions on behalf of Plaintiff and the DNC Class.

11.1. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

11.2. Defendant violated the TCPA by initiating more than one telephone solicitation (calls or texts) in a twelve-month period to persons and entities whose telephone numbers were listed on the Do Not Call Registry and who had not consented to receive the calls/texts. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

11.3. Defendant's violations were negligent or knowing/willful.

11.4. Relief Sought: For himself and all class members, Plaintiff requests the following relief:

11.4.1. That Defendant be restrained from engaging in future telemarketing in violation of the TCPA.

11.4.2. That Defendant, and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

11.4.3. That the Court certify the claims of the named Plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel be named as counsel for the classes.

11.4.4. That the Plaintiff and all class members be awarded statutory damages of $500 for each violation, with triple damages for any willful or knowing violation, as provided by the law.

11.4.5. That the Plaintiff recover his attorneys' fees and costs.

11.4.6. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**12. Count Two: Violation of the TCPA's Do Not Call provisions on behalf of Plaintiff and the Policy Class.**

12.1. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

12.2. Defendant violated the TCPA by initiating telephone solicitations (calls or texts) to persons and entities whose residential telephone numbers were listed on the Do Not Call Registry when Defendant did not have a compliant Do Not Call policy. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(2).

12.3. Defendant also violated the TCPA by initiating telephone solicitations to persons and entities whose residential telephone numbers were listed on the Do Not Call Registry when Defendants did not include a telephone number or address at which the person or entity may be contacted. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(4).

12.4. Defendant's violations were negligent or knowing/willful.

12.5. Relief Sought: For himself and all class members, Plaintiff requests the following relief:

12.5.1. That Defendant be restrained from engaging in future telemarketing in violation of the TCPA.

12.5.2. That Defendant, and their agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

12.5.3. That the Court certify the claims of the named Plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel be named as counsel for the classes.

12.5.4. That the Plaintiff and all class members be awarded statutory damages of $500 for each violation, with triple damages for any willful or knowing violation, as provided by the law.

12.5.5. That the Plaintiff recover his attorneys' fees and costs.

12.5.6. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**13. Count Three: Violation of the TCPA's telemarketing regulations on behalf of Plaintiff and the Internal Do Not Call Request Class.**

13.1. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

13.2. Defendant violated the TCPA by initiating telephone solicitations (calls or texts) to persons and entities whose residential telephone numbers were listed on Defendant's internal do not call list and/or where such persons had requested that Defendant stop calling/texting them. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(3).

13.3. Defendant's violations were negligent or knowing/willful.

13.4. Relief Sought: For himself and all class members, Plaintiff requests the following relief:

13.4.1. That Defendant be restrained from engaging in future telemarketing in violation of the TCPA.

13.4.2. That Defendant, and their agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

13.4.3. That the Court certify the claims of the named Plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel be named as counsel for the classes.

13.4.4. That the Plaintiff and all class members be awarded statutory damages of $500 for each violation, with triple damages for any willful or knowing violation, as provided by the law.

13.4.5. That the Plaintiff recover his attorneys' fees and costs.

13.4.6. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**14. Count Four: Violation of Tex. Bus. & Com. Code, Chapter 305 ("TBCC") on behalf of Plaintiff and the Texas Class.**

14.1. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

14.2. Plaintiff is a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

14.3. Toyota of Dallas is a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

14.4. Pursuant to Section 305-053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. §

227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both an injunction and damages.

14.5. As set forth above Defendant violated 47 U.S.C. § 227, or a regulation adopted under that provision.

14.6. Plaintiff is entitled to a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305.

14.7. Pursuant to Section 305-053(b) of the Texas Business & Commerce Code, Plaintiff is entitled to the greater of $500.00 for each violation or Plaintiff's actual damages for each call negligently made by Defendants.

14.8. Pursuant to Section 305-053(c) of the Texas Business & Commerce Code, Plaintiff is entitled to not more than the greater of $1,500.00 for each violation or three times Plaintiff's actual damages for each violation by Defendant that the Court finds was made knowingly or intentionally.

14.9. Relief Sought: For himself and all class members, Plaintiff requests the following relief:

14.9.1. That Defendant be restrained from engaging in future telemarketing in violation of the TBCC.

14.9.2. That Defendant, and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

14.9.3. That the Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel be named as counsel for the classes.

14.9.4. That the Plaintiff and all class members be awarded statutory damages of $500 for each violation, with triple damages for any willful or knowing violation, as provided by the law.

14.9.5. That the Plaintiff recover his attorneys' fees and costs.

14.9.6. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**15. Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted:

By: *_/s/ Chris R. Miltenberger_*
Chris R. Miltenberger
Texas State Bar Number 14171200

**Designated as Lead Attorney**

**The Law Office of Chris R. Miltenberger, PLLC**

1360 N. White Chapel, Suite 200
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Attorneys for Plaintiff

**Certificate of Conference**

The undersigned certifies that pursuant to Fed. R. Civ. P. 15(a)(2) Defendant consents in writing to the filing of this First Amended Complaint.

By: *_/s/ Chris R. Miltenberger_*
Chris R. Miltenberger

**Certificate of Service**

The undersigned certifies that the foregoing document was filed electronically through the Court's CM/ECF system in compliance with the Local Rules.

By: *_/s/ Chris R. Miltenberger_*
Chris R. Miltenberger